# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 6246 | **DATE** | 12/3/2003 |
| **CASE TITLE** | Alport vs. Sprint Corp. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Alport's motion (Doc 5-1) to remand is denied. Plaintiff's motion for leave to file supplemental response memorandum in further opposition to Sprint's motion to compel, is granted. Defendants' motion to extend time to December 15, 2003 to file their reply is granted. Ruling set for January 22, 2004 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | DEC 04 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 18 |
| | Copy to judge/magistrate judge. | | | |
| | SCT courtroom deputy's initials | 03 DEC -3 AM 10:50 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVE ALPORT, on behalf of himself and all others similarly situated, ) ) ) | | |
| Plaintiff, ) ) | | |
| vs. ) ) | 03 C 6246 | |
| SPRINT CORPORATION; SPRINT INTERNATIONAL COMMUNICATIONS CORP.; SPRINT SPECTRUM LP d/b/a Sprint P.C.S.; SPRINTCOM, INC. d/b/a Sprint P.C.S.; and SPRINT COMMUNICATIONS L.P., ) ) ) ) ) ) ) | | **DOCKETED** DEC 0 4 2003 |
| Defendants. ) | | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Plaintiff Steve Alport's ("Alport") motion to remand this case to state court. For the reasons set forth below, the motion is denied.

### **BACKGROUND**

Defendants (collectively referred to as "Sprint") are one of the nation's largest providers of wireless phone services. Alport is a Sprint wireless customer who resides in Cook County, Illinois. According to Alport, he and Sprint entered into an agreement whereby Sprint promised to provide wireless phone services for the rate of $39.99 per

month plus "any legitimate, government-mandated taxes, fees, and surcharges." Compl. at 5. Sometime around March 2003, Sprint began including on Alport's bill, underneath the heading "Surcharges and Fees," a line-item titled "Federal E911" ("Federal E911 surcharge"). Id. Alport's Federal E911 surcharge fee for March 2003 was $0.40. He claims that other Sprint customers' Federal E911 surcharges have ranged from that amount to at least $1.60 per month. He also asserts that other Sprint customers' Federal E911 surcharges have been included in the "Taxes" portion of their monthly bills.

On August 5, 2003, Alport filed a four-count complaint in the Circuit Court of Cook County, Chancery Division, on behalf of himself and similarly situated individuals. The four counts of Alport's complaint all stem from his claim that the Federal E911 surcharge is "a hidden price increase in violation of the service plans between Sprint and [it's customers] that Sprint improperly characterized as a federally-mandated tax and intentionally buried among a list of government-mandated taxes on consumers' bills." Pl.'s Mem. at 1. None of the counts assert a federal cause of action: Count I alleges violations and seeks recovery under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*. Counts II and III respectively allege Illinois common law claims of breach of contract and unjust

enrichment. Count IV seeks an accounting of revenue from the Federal E911 surcharge, also under Illinois common law.

On September 5, 2003, Sprint filed a notice of removal, removing the case to this court. In support of removing the case to federal court, Sprint contends that this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1441 and (1) 28 U.S.C. § 1331, because at least some of the relief Alport seeks is completely preempted by federal law and because of the "substantial federal question doctrine," (2) 28 U.S.C. § 1332, because the parties are diverse and the amount in controversy exceeds $75,000, and (3) 28 U.S.C. § 1367, because we should exercise supplemental jurisdiction over any remaining claims not covered by the above statutes. Countering that removal was improper because this court could not have original jurisdiction over this case, Alport presently moves to remand to state court.

## LEGAL STANDARD

A defendant may remove to federal court a case filed in state court if the federal court would have jurisdiction over the lawsuit as originally filed by the plaintiff. 28 U.S.C. § 1441(a), Trujillo v. Bridgestone-Firestone, Inc., 2000 WL 1690308, *1 (N.D. Ill. 2000). A federal court will have subject matter jurisdiction if there is "diversity of citizenship" under 28 U.S.C. § 1332(a) or if there is a "federal question" pursuant to 28 U.S.C. § 1331, meaning that the action "aris[es] under the Constitution, laws, or

treaties of the United States." Id.; McKenzie v. Wilson, 2002 WL 31056688, *1 (N.D. Ill. 2002). When deciding removal motions, the court should presume that the plaintiff chose a valid and proper forum and resolve doubts about jurisdiction in favor of remand. Doe v. Allied-Signal, Inc., 985 F.2d 908, 911 (7th Cir. 1993). The party seeking removal carries the burden of establishing jurisdiction. Shaw v. Dow Brands, Inc., 994 F.3d 364, 366 (7th Cir. 1993). If at any time after removal and before final judgment it becomes clear that the case was not within the subject matter jurisdiction of the United States district courts, the district court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c); Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 8 (1983).

## DISCUSSION

In order to preclude removal, Sprint must demonstrate that this court has original jurisdiction over this case even though Alport's complaint contains only Illinois causes of action. In support of its position, Sprint points to the "complete preemption" doctrine[1] and the case of Bastien v. AT & T Wireless Services, Inc., 205 F.3d 983 (7th Cir. 2000).

---

[1] Sprint also argues that removal was proper based on diversity jurisdiction and supplemental jurisdiction. However we feel that because the remand issue can be resolved through analysis of complete preemption, we will ignore Sprint's other jurisdictional arguments as moot.

As a basic principle of federal jurisdiction, the well-pleaded complaint rule allows for a plaintiff to avoid the federal courts by pleading only state law claims. Bastien at 986; Franchise Tax Bd. at 10. In most cases, federal preemption constitutes a defense to a state law action and is thus not a basis for removal from state court. Bastien at 986; Gully v. First Nat'l Bank, 299 U.S. 109, 113 (1936). However, Congress may so completely preempt a particular area of law such that no room remains for state regulation and any civil complaint relating to that area would be "necessarily federal in character." Bastien at 986 (quoting Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)). While instances of complete preemption are "extraordinary," when the doctrine applies it "converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Metropolitan Life at 65.

In Bastien, the Seventh Circuit confronted issues surrounding complete preemption and components of the Federal Communications Act of 1934 ("FCA"), 47 U.S.C. § 151, *et seq.*, that address commercial wireless telephones services. The provision in question states that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service, except that this paragraph shall not prohibit a State from regulating the other terms and conditions of commercial mobile services." 47 U.S.C. § 332(c)(3). Finding that "there

can be no doubt that Congress intended complete preemption" by enacting 47 U.S.C. § 332(c)(3), the Bastien court held that a plaintiff cannot "use the 'well-pleaded complaint' rule to shield himself from federal court jurisdiction . . . if his complaint in fact challenges rates or market entry." Bastien at 986-87. Proclaiming that it would "not be bound by names and labels placed on a complaint by the plaintiff when that complaint in fact raises a federal question," id. at 987, the court went on to analyze whether the complaint in question involved the defendant's (a wireless phone company) rates or market entry.

The Bastien plaintiff, like Alport, was a wireless phone customer who sought to initiate a class action against his wireless provider in Illinois courts. Bastien's provider, AT&T, was a new entry into the Chicago wireless market, and had not yet constructed a sufficient amount of towers to sustain uniform continuous service. This resulted in many of Bastien's phone conversations being "dropped" mid-call. Bastien's complaint alleged breach of contract and violations of the ICFA, asserting that AT&T misrepresented the quality of its service and failed to provide the adequate wireless services it had promised. Bastien at 985. AT&T removed the case from the Illinois courts to this court and Bastien sought a remand. While Bastien's complaint alleged only Illinois claims, the Seventh Circuit decided to "look at the face of the complaint and ask what the nature of the claims are and what the effect of granting the relief

requested would be." Id. at 989. Even though Bastien appeared to be challenging the quality of services that AT&T provided, the court determined his complaint "would directly alter the federal regulation of tower construction, location and coverage, quality of service and *hence rates for service*." Id. (emphasis added). Because the FCA makes "the FCC responsible for determining the . . . rates and conditions" of wireless services," Bastien's claims were "insulate[d] . . . from state court review," making remand improper. Id.

The decision in Bastien provides district courts in the Seventh Circuit two points of guidance in determining whether federal jurisdiction is proper in complaints involving wireless telephone service. First, courts must look beyond the state causes of action and determine what would be the practical effect of granting relief. Second, and more important to the resolution of this motion, is that the federal preemption of wireless provider's "rates" encompasses a much broader area of conduct than simply how much money a provider charges for a particular amount of minutes of service.

Following Bastien, courts in this district have applied its principles concerning complete preemption to state court claims challenging wireless phone service. The most instructive of these cases to our inquiry is Gilmore v. Southwestern Bell Mobile Systems, 156 F. Supp.2d 916 (N.D. Ill. 2001). The Gilmore plaintiff, another wireless customer, alleged that the defendant wireless company was only allowed to add

applicable taxes to his monthly statement, and was thus improperly including a "Corporate Account Administration Fee" in his bill. Id. at 919. The complaint, filed in state court, alleged breach of contract, unjust enrichment, and fraud under Illinois common law and the ICFA. Id. Relying on Bastien, the Gilmore court was faced with the question whether the plaintiff's complaint was really an artfully-pleaded challenge to the defendant's rates (and thus preempted by the FCA) that would establish federal removal jurisdiction.

In order to answer this question, the Gilmore court determined it must focus on "whether the [disputed fee] being unreasonable, unjust, or otherwise inappropriate needs to be considered in order to resolve" the plaintiff's claim. Id. at 923. In analyzing the validity of the extra fee, the Gilmore court found that the plaintiff's contract claim that he should not have been required to pay the extra fee because he had not agreed to paying it at the time of his service contract's formation was "a challenge to the appropriateness of the [extra fee] and *therefore a rate challenge* that falls within the purview of [the FCA.]" Id. at 924 (emphasis added). Because the Gilmore plaintiff claimed that the wireless company's fee was not one that was allowed under the FCA, his contract claim was "preempted by the FCA and must be construed as a claim under the FCA that falls within federal jurisdiction." Id. The Gilmore court also determined that the plaintiff's fraud and unjust enrichment claims were preempted

-8-

by the FCA as "rate challenges," as they respectively required answers to the questions whether "any services provided in return were not worth the amount of the Fee," and "whether the Fee was unjust." Id. at 925.

We find that Alport's case is quite analogous to Gilmore. Looking past the language and form of Alport's complaint, the paramount issue involved is the validity and legitimacy of the Federal E911 surcharge. Under Bastien and Gilmore, it is clear that this central question cannot be answered without interpreting the FCA, making Alport's complaint a rate challenge that is preempted by federal law.

Alport does offer numerous cases supporting his proposition that Bastien provides an improper and overly broad approach for confronting claims of complete preemption involving challenges to wireless service agreements. Despite the considered weight and judgment behind some of his sources, including federal appellate courts and the Federal Communications Commission, the authority that governs our application of the law is the Seventh Circuit. That means Bastien is controlling, even if the case may be in disagreement with other jurisdictions' interpretations of the FCA and the complete preemption doctrine. Given Bastien's mandate that the FCA preempts a wide variety of state law challenges to wireless service billing practices, we find Alport's complaint concerning the propriety of the Federal E911 surcharge to be a rate challenge that fits squarely within the scope of

federal jurisdiction. For this reason, removal was proper pursuant to 28 U.S.C. § 1441.[2]

## CONCLUSION

Based on the foregoing analysis, Alport's motion to remand is denied.

*Charles P. Kocoras*
Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC - 3 2003

---

[2] Alport also prays for costs and attorneys' fees, claiming that Sprint's removal to federal court was made in bad faith. Pl.'s Mem. at 15. Even though this request should be stricken as a result of Alport's gross violations of Local Rule 5.2 (he uses a much smaller font than allowed in an attempt to circumvent the fifteen-page filing limit), based on our above analysis it is obvious that Sprint's arguments were non-frivolous and made in good faith. Awarding costs and fees to Alport is therefore inappropriate. See Fedor v. Cingular Wireless Corp., 2001 WL 1465813, *4 (N.D. Ill. 2001).